No. 15,592.

LEFKARAS ET AL. *v.* MOFFAT COAL COMPANY ET AL.
(158 P. [2d] 386)

Decided April 2, 1945. Rehearing denied April 30, 1945.

Mr. DONALD SHERE, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, BARBARA LEE, Assistant, for plaintiffs in error.

Messrs. HAWKINS & HAWKINS, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

IN designating the parties hereto, Vardis Lefkaras, one of the plaintiffs in error, will be referred to as employee; Industrial Commission of Colorado, the other plaintiff in error, as commission; Moffat Coal Company, one of the defendants in error, as employer, and the Employers' Mutual Insurance Company, the other defendant in error, as insurer.

The employee was engaged as a coal miner, and on January 25, 1940, accidently sustained injuries arising out of and in the course of his employment. The employee fully complied with all the statutory requirements entitling him to a hearing upon his claim, and on April 5, 1941, the referee of the commission made findings of fact and award, the pertinent parts of which were as follows:

"The permanent disability consists of 15% as working unit; * * *

"Ordered, That the Respondents pay compensation to

the claimant at $14.00 per week * * * until the further sum of $2,051.87 is paid, * * * "

The amount due the employee under these findings of fact and award had been fully paid on December 21, 1943, when the employee filed his petition to reopen his claim. On December 24, 1943, the commission, on its own motion, reopened the case for the purpose of determining whether there had been error, mistake or change of condition. Additional testimony upon the claim was taken, and on February 1, 1944, a supplemental order was entered by the referee, the pertinent parts of which read:

"The claimant was employed as a miner by the above named employer respondent at an average weekly wage which was maximum and on January 25, 1940 sustained an accident arising out of and in the course of his employment suffering an injury to his forehead and left ankle. He quit work the same day and has not returned to work. By an order entered herein, April 5, 1941, claimant received an award of 15% as a working unit which entitled him to compensation of $2,051.87 as and for permanent partial disability all of which has been paid.

"Claimant was born May 15, 1888, is now 55 years of age and his expectancy of life is 17.40 years.

"The Referee further finds from all of the evidence and from the record that claimant now has a permanent partial disability of 20% as a working unit.

"It is, therefore, ordered: That respondents pay compensation to claimant *starting with the date of this award* at the rate of $14.00 per week and continue at the same rate until the full sum of $633.36 has been paid for and on account of permanent partial disability." (Italics ours)

The supplemental order of the referee was, on March 9, 1944, made the finding of fact and award of the commission.

By appropriate action the records were certified to

the district court for review. Upon trial in the district court, it found that the commission had misconstrued and misinterpreted section 357, chapter 97, '35 C.S.A., in calculating the sum yet due the employee. The trial court found that the amount due the employee was $481.57; set aside the commission's findings of fact and award, and entered judgment requiring the employer and insurer to pay to the employee compensation at the rate of $14.00 per week until the full sum of $481.57 has thus been paid.

The section involved reads:

"Where an accident causes injury resulting in permanent partial disability * * * the injured employee *shall be deemed to be permanently disabled from the time he is so declared by the commission and from said time shall be entitled to compensation for permanent partial disability in addition to any compensation theretofore allowed.* In determining permanent partial disability, the commission shall ascertain in terms of percentage the extent of general permanent disability which the accident has caused, taking into consideration not only the manifest weight of evidence, but the general physical condition and mental training, ability, former employment and education of the injured employee. The commission then shall determine the injured employee's expectancy of life from recognized expectancy tables and such other evidence relating to his expectancy as may be presented; it shall then ascertain the total amount which said employee would receive during the balance of his expectancy if permanently totally disabled at not more than the maximum, nor less than the minimum, weekly indemnity specified in this article for temporary total disability and shall then take that percentage of the total sum so arrived at as is indicated by the percentage of general permanent disability found to exist in the manner as hereinabove set forth, not to exceed in any event, however, the aggregate sum of thirty-six hundred and forty dollars ($3640.00). Said

sum to be paid at a weekly rate not more than the maximum nor less than the minimum herein specified for injuries causing total disability.

"Provided that at any time, and from time to time, *during the period for which compensation has been awarded for either permanent total or permanent partial disability,* upon application of any party in interest, the commission shall require such injured employee to be examined by a physician, or physicians, and upon petition from any such interested party, supported by a showing that the disability of such injured employee has undergone a change in degree since the entry of such award, the case shall be reopened and the compensation theretofore awarded shall be modified, terminated or continued as the evidence may require." (Italics ours)

The parties hereto were in full agreement that section 357, supra, controls the commission in its determination of the amount due employee as an additional five per cent permanent partial disability, but were in complete disagreement as to the proper method of calculating the amount of this five per cent additional allowance.

The employee contended that under section 357, supra, the five per cent allowed as additional permanent partial disability should be computed as of January 17, 1941, when the employee was fifty-two years of age rather than as of February 1, 1944, when the employee was fifty-five years of age. The employee used as the basis of his calculation an expectancy of 19.49 years which would be the expectancy of one who was fifty-two years of age, and, as a result, contended that the amount yet due the employee under the January 17, 1941, and February 1, 1944, awards was $785.87. In other words, the employee construed section 357, supra, in such a way that the five per cent additional allowance as permanent partial disability, although entered on February 1, 1944, related back to the first findings of fact and award of January 17, 1941.

The commission contended that the five per cent additional permanent partial disability should be based upon the employee's age on February 1, 1944, the date when the supplemental award was entered. On February 1, 1944, the employee had reached the age of fifty-five years and had an expectancy of 17.40 years. Upon this basis the commission computed the amount due the employee at $633.36.

The employer and insurer, in construing section 357, supra, contended that the employee's expectancy on February 1, 1944, was the proper basis of determining the employee's expectancy, and using 17.40 years with the employee's total earning at the maximum, arrived at $12,667.20 as the amount which the employee would earn during the remainder of his life. They contended that the employee should be entitled to a twenty per cent permanent partial disability based upon earnings of $12,667.20 which would equal $2,533.44. The employee had received, under the January 17, 1941, award, the sum of $2,051.87, which would leave a balance yet due the employee, under the February 1, 1944, award, of $481.57.

█ █ The briefs filed herein cite no decision of this or other courts construing this statute and determining the proper method of computing the total amount of compensation due the employee here. We are cited to our decision in *Wierman v. Tunnell*, 108 Colo. 544, 120 P. (2d) 638. This decision, however, is not particularly helpful because an examination of the files in the office of the Industrial Commission, as well as a consideration of that opinion, discloses that there the employee was forty-six years of age at the time of a hearing before the referee, who found that *there was no permanent disability*, but that an industrial disability was present to the extent of five per cent, and that it would not continue beyond six or twelve months. No petition for review of this finding was filed. Subsequently the commission ordered the case reopened, and, after a full

hearing, it modified the findings of three years previous in which no permanent partial disability was disclosed, and entered findings and award of five per cent permanent partial disability. This latter award was the first finding and award of the commission that a permanent partial disability existed, and as the employee had then reached the age of forty-eight years, this was the proper basis to have used in determining the employee's expectancy. The commission, as well as the district court, based the employee's compensation on his expectancy at the age of forty-six years, and for that reason we reversed the district court and ordered it and the commission to enter judgment based upon the employee's expectancy at the age of forty-eight years.

The first determination of permanent partial disability in Wierman-Tunnell, supra, was made at the time when the employee had reached the age of forty-eight years. Section 357, supra, applies only when there has been a determination of permanent total or permanent partial disability. No such determination was made in the Wierman-Tunnell case until the employee had reached the age of forty-eight years, and, consequently, his expectancy should be considered as of that age. The Wierman-Tunnell factual situation so materially differed from the instant case that the decision therein is not determinative here, but it is not in conflict with our conclusion here.

Here there was a determination of permanent partial disability and the award made thereunder was fully paid. However, on a subsequent hearing, a determination was made that the permanent partial disability had increased to the extent of five per cent, and under these circumstances the amount due the employee should be based upon his age at the time of the later determination. There is no finding of fact or award that the employee, on January 17, 1941, had sustained a permanent partial disability of twenty per cent, and a finding is necessary before any award becomes effective.

The supplemental order specifically found that claim- and *now* has a permanent partial disability of twenty per cent as a working unit, and it is therein ordered that respondents pay compensation to claimant, starting with the day of this award, at the rate of $14.00 per week. At the date of this award claimant was fifty-five years of age, his expectancy was 17.40 years. The weekly compensation multiplied by fifty-two gives his yearly compensation at $728.00. This sum multiplied by 17.40 gives an earning expectancy of $12,667.20. This earning expectancy based upon a five per cent disability from the date of the order is $633.36. We believe the construction adopted by the commission is authorized by section 357, supra, and it is accordingly approved.

The judgment of the district court is reversed and the cause remanded with directions to affirm the commission's findings of fact and award of March 9, 1944.